UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| NEUTRON DEPOT, LLC, *et al*, § § Plaintiffs, § § VS. § § BANKRATE, INC., *et al*, § § Defendants. § | CIVIL ACTION NO. 2:14-CV-192 |

## ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

Plaintiffs Neutron Depot, LLC and DepotWeb, Inc. move for a default judgment against Defendant Insurance Depot Marketing Corporation (Insurance Depot Marketing) (D.E. 142). For the reasons discussed more fully below, Plaintiffs' motion is granted.

### JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1121. Venue is proper in this Court because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district.

### BACKGROUND

Plaintiffs engage in the marketing, sale, and servicing of insurance related products and services. In 1993, Plaintiffs filed a federal trademark application with the United States Patent and Trademark Office (USPTO) for "INSURANCE DEPOT" (the Mark). The Mark is owned by CSi Agency Services, Inc. (CSi) and has been in continuous use with the public as an identifier of a source of goods or services since 1993. CSi licensed use of the Mark to Plaintiffs together with the right of enforcement

and the right to bring suit under the Mark. Plaintiffs have actively advertised, marketed, and continuously promoted the Mark both online and in written documentation in connection with their insurance business. The Mark is a valuable source identifier among the relevant class of customers for Plaintiffs' insurance products.

Plaintiffs allege that Defendant Insurance Depot Marketing has its principal place of business in Florida and transacts business in Texas, including the marketing and selling of insurance and insurance related products and services. Plaintiffs further allege that Insurance Depot Marketing has misused Plaintiffs' Mark by launching competing insurance service and product campaigns using the Mark on its own website. In addition, Plaintiffs allege that Insurance Depot Marketing has illegally used the Mark in paid website advertisements and links for the purpose of circumnavigating and diverting potential insurance customers or leads to its website.

Plaintiffs allege that Insurance Depot Marketing either owns one or more websites, website advertisements, or links that infringe on Plaintiffs' Mark, or has or had a combination, relationship, and marketing agreement with another Defendant in this case, Defendant Insurance Depot America, who infringed on Plantiffs' mark, or both. Plaintiffs further assert that Insurance Depot Marketing intended to infringe on Plaintiffs' Mark by driving internet traffic to one or more websites owned by Insurance Depot America for mutual profit and commercial gain.

Plaintiffs bring several causes of action against Defendant for violation of the Lanham Act, 15 U.S.C. § 1051 *et seq*.[1] and the Anti-cybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d).[2] In particular, Plaintiff alleges trademark infringement in violation of 15 U.S.C. § 1114 and unfair competition, dilution of Plaintiff's Mark, and cybersquatting in violation of 15 U.S.C. § 1125. Plaintiffs argue that Defendant has been grossly negligent and has acted deliberately, willfully, intentionally, in bad faith, maliciously, and with full knowledge and conscious disregard of Plaintiffs' rights, making this an exceptional case and entitling Plaintiffs to enhanced damages and attorney's fees under 15 U.S.C. § 1117.

Plaintiffs also allege that they are entitled to cancellation of Defendant's domain name registration or transfer of the domain name to Plaintiff along with monetary compensation and statutory penalties pursuant to the ACPA, 15 U.S.C. § 1125(d). Plaintiffs additionally allege violation of their rights under Texas common law for trademark infringement and dilution, and also allege that Defendant engaged in a civil conspiracy and illegal joint enterprise under state and federal common law.

Plaintiffs assert that they served Insurance Depot Marketing on April 23, 2015, with a summons and copy of the complaint by personal delivery to Victor Harvey as its registered agent at 651 NW 118th Avenue, Plantation, FL 33324 (Ex. C to Mot. for

---

[1] "Stated generally, the Lanham Act creates a cause of action on the ground of infringement or dilution of trademarks and trade names, service marks, trade dress, and a cause of action for unfair competition." 87 C.J.S. Trademarks, Etc. § 274.

[2] "Congress' response to the problem of domain disputes was to enact the Anticybersquatting Consumer Protection Act (ACPA), which added § 43(d) to the Lanham Act. This provision makes it illegal to register, traffic in, or use a domain name which is identical or confusingly similar to a distinctive mark or which is identical or confusingly similar to or dilutive of a famous mark, with a bad faith intent to profit from that mark, including a personal name which is protected as a mark." 4 Callman on Unfair Comp., Tr. & Mono. § 22:38 (4th Ed.) (internal citations omitted).

Default Jmt.; D.E. 142-3). The answer to the complaint was due on May 14, 2015, but Insurance Depot Marketing has neither filed an answer nor otherwise appeared in this lawsuit. Upon request by the Plaintiffs, the Clerk entered default against Insurance Depot Marketing on July 27, 2015 (Ex. F to Mot. for Default Jmt., D.E. 142-6).

Plaintiffs seek statutory damages, an injunction prohibiting Insurance Depot Marketing from using Plaintiffs' Mark, an order for forfeiture or cancellation of Insurance Depot Marketing's website, and a permanent injunction prohibiting Insurance Depot Marketing from using the domain www.insurancedepotamerica.com. Plaintiffs also seek attorney's fees and costs.

## APPLICABLE LAW

**A.  Default Judgment**

Rule 55(a) of the Federal Rules of Civil Procedure provides that when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend itself, and the failure is shown by affidavit or otherwise, the clerk must enter the party's default. The Clerk has entered default against Insurance Depot Marketing in this case.

Rule 55(b) provides that if the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk, on plaintiff's request supported by an affidavit showing the amount due, must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person. In all other cases, the party must apply to the court for a default judgment. The court may conduct hearings or make referrals—preserving any federal

statutory right to a jury trial—when, to enter or effectuate judgment it needs to (1) conduct an accounting; (2) determine the amount of damages; (3) establish the truth of any allegation by evidence; or (4) investigate any other matter. Fed. R. Civ. P. 55(b).

Default judgments are considered a drastic remedy, not favored by the federal rules, and resorted to by courts only in extreme situations. *Sun Bank of Ocala v. Pelican Homestead and Sav. Ass'n.*, 874 F.2d 274, 276 (5th Cir. 1989) (citations omitted). They are "'available only when the adversary process has been halted because of an essentially unresponsive party.'" *Id.* (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)).

Plaintiffs have shown themselves entitled to a default judgment against Insurance Depot Marketing because Defendant has failed to appear and has halted the adversary process. Thus, Plaintiffs' motion for default judgment against Defendant Insurance Depot Marketing is granted.

### B. Remedies

### 1. Injunctive Relief

Plaintiffs ask the Court to enter an injunction prohibiting Insurance Depot Marketing from using the Mark. Pursuant to 15 U.S.C. § 1116(a), a court has the power to grant a permanent injunction under the Lanham Act. To be entitled to a permanent injunction, a party must show (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for the injury; (3) that, considering the balance of hardships between the plaintiff and defendant, an equitable remedy is warranted; and (4) that the public interest would not be

disserviced. *Clearline Technologies, Ltd. v. Cooper B-Line, Inc.*, 948 F.Supp.2d 691, 714 (S.D. Tex. 2013). The court may issue a permanent injunction as part of a default judgment. *Twist and Shout Music v. Longneck Xpress*, *N.P.*, 441 F.Supp.2d 782, 785 (E.D. Tex. 2006).

In this case, the entry of default is tantamount to actual success on the merits and satisfies the first prong of the test—that Plaintiff has suffered an actual injury. *Id.*; *United States 'ex rel' M-Co Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Plaintiffs have no adequate remedy at law if Defendant is allowed to continue to use the Mark. Defendant will not suffer a hardship if it is forced to stop using the Mark and the public will not be harmed if Defendant is enjoined from using the Mark. Thus, Plaintiffs have shown that they are entitled to the injunctive relief they seek.

For similar reasons, under the ACPA, Plaintiffs are entitled to an order enjoining Defendant from using a domain name that utilizes the phrase "INSURANCE DEPOT" or any other trademark or trade dress that is confusingly similar to Plaintiff's Mark, including www.insurancedepotamerica.com. Defendant Insurance Depot Marketing is permanently enjoined from infringing upon Plaintiffs' Mark, as detailed more fully below.

### 2. Money Damages

Plaintiffs seek statutory damages under the Lanham Act and the ACPA and also seek attorney's fees. Pursuant to 15 U.S.C. § 1117, when a plaintiff elects to recover statutory damages rather than actual damages, the court may enter an award of statutory damages for the use of a counterfeit mark in the amount of not less than $1,000 or more

than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just. If the court finds that use of the counterfeit mark was willful, the court may award up to $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed.[3] Plaintiffs herein ask for $100,000 for the trademark violation and $1,000,000 for each trademark willfully infringed, for a subtotal of $1,100,000.

Plaintiffs who show a violation of the ACPA are entitled to an award of statutory damages of not less than $1,000 or more than $100,000 per domain name, as the court considers just. 15 U.S.C. § 1117(d). Plaintiffs ask for $100,000 in statutory damages. In total, Plaintiffs ask the court to award them $1,200,000 in statutory damages.

The Lanham Act does not provide guidance about determining an appropriate amount of statutory damages. However, courts often find guidance in damages awards assessed under the Copyright Act. *Philip Morris USA Inc., v. Lee*, 547 F.Supp.2d 685, 695 (W.D. Tex. 2008). Factors to be considered include the defendant's profits and saved expenses, the plaintiff's lost revenues, and the defendant's state of mind. *Id.* Courts also consider whether the defendant has cooperated in providing records from which to assess the value of the infringing material and also the potential for discouraging the defendant from engaging in similar behavior going forward. *Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986).

---

[3] For reasons which are unclear, Plaintiffs assert that §1117(c) entitles them to an award of between $1,000 and *$100,000* per mark per type of good and up to *$1,000,000* if the infringement is willful. The statute is clear that the upper limits are $200,000 and $2,000,000, respectively. *See also Coach, Inc. v. Brightside Boutique*, No. 1:11-CA-20-LY, 2012 WL 32941 at *4 (W.D. Tex. 2012) (citing statute).

In this case, there is no evidence regarding Defendant's profits, saved expenses, or lost revenues, in part because Defendant did not file an answer or participate in the lawsuit. Plaintiffs submitted screenshots from the results of internet searches showing that a search using the term "Insurance Depot" resulted in a link to Insurance Depot America's website, using the domain name www.insurancedepotamerica.com (Ex. 5. to Mot. for Default Jmt., D.E. 134-2). That is the only evidence Plaintiffs present that Defendant may have profited or saved expenses at Plaintiffs' expense or that Plaintiffs lost revenues.

While there is no evidence about Defendant's state of mind, some courts have found that defendants are deemed to have admitted they acted knowingly and intentionally by virtue of their default. *Sculpt, Inc. v. Sculpt New York, LLC*, No. H-14-3398, 2014 WL 6690224 at *5 (S.D. Tex. 2015) (citing *Malletier v. Carducci Leather Fashions, Inc.*, 648 F.Supp.2d 501, 504 (S.D.N.Y. 2009)); s*ee also Doctor's Associates, Inc. v. Vinnie's Smokehouse/Meat Specialty, LLC*, No. 10-3661, 2011 WL 1226485 at *2 (E.D. La. 2011) ("Willful copyright infringement is considered proven even when the defendant has defaulted.")

Despite the lack of evidence regarding damages, the Court is mindful that "the Lanham Act's statutory damages provision was designed to ensure adequate compensation and deter the use of counterfeit marks." *Philip Morris*, 547 F.Supp.2d at 695 (citing *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F.Supp.2d 567, 583 (E.D. Pa. 2002)). An award of statutory damages against Insurance Depot Marketing will

discourage it from using Plaintiffs' Mark in the future or attempting to divert business from Plaintiffs to itself.

Plaintiffs seek statutory damages in the middle of the range provided by the statute. The Court concludes that the factors considered by courts in assessing statutory damages weigh in favor of Plaintiffs and the amount of damages they seek. Thus, the Court orders that Insurance Depot Marketing pay Plaintiffs $1,100,000.00 in damages pursuant to 15 U.S.C. § 1117(c).

Plaintiffs also seek an award of statutory damages under the ACPA in the amount of $100,000. For the same reasons discussed above, the Court finds that an award of statutory damages under 15 U.S.C. 1117(d) in the amount of $100,000 is just in these circumstances. The court enters judgment for Plaintiffs in the total amount of $1,200,000.00.

### 3. Attorney's Fees

Plaintiffs seek attorney's fees in the amount of $5,362.50 and costs in the amount of $424.35. A district court may award a prevailing party its reasonable attorney's fees under the Lanham Act in "exceptional cases." 15 U.S.C. § 1117(a). The prevailing party must show the exceptional nature of the case by clear and convincing evidence. *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 490 (5th Cir. 2004). An "exceptional case" is one where the violative acts can be described as malicious, fraudulent, deliberate, or willful. *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 491 (5th Cir. 2008). The necessary showing demands a high degree of culpability, such as bad faith or fraud. *Id.*

As cited above, courts have held that defendants are deemed to have admitted they acted knowingly and intentionally by virtue of their default. *Sculpt, Inc.*, No. H-14-3398, 2014 WL 6690224 at *5 (S.D. Tex. 2015). *See also Coach v. Brightside Boutique,* No. 1:11-CA-20-LY, 2012 WL 32941 (W.D. Tex. 2012) (evidence of intentional infringement has been held to establish an exceptional case). The Court finds that by virtue of its default, Defendant has conceded that it acted deliberately and willfully. Thus, Plaintiffs are entitled to attorney's fees under 15 U.S.C. § 1117(a).

Plaintiffs' counsel submitted an affidavit in which he stated that he spent 14.30 hours on this case and that he bills at his standard hourly rate of $375.00 per hour. Counsel further stated in his affidavit that he is familiar with the hourly rates generally charged by litigation attorneys and intellectual property law attorneys and that $375.00 per hour is a reasonable rate for an attorney handling the litigation of patent and trademark infringement actions (Decl. of Andrew Sher, Ex. D to Mot. for Def. Jmt., D.E. 142-4). Plaintiffs seek $5,362.50 in attorney's fees and $424.35 in costs directly related to the filing of this lawsuit. The Court finds that the amount of attorney's fees and costs sought by Plaintiffs is reasonable.

## CONCLUSION

Based on the foregoing, Plaintiffs' Motion for Default Judgment Against Defendant Insurance Depot Marketing Corporation, Inc. (D.E. 142) is GRANTED. The Court orders the following injunctive relief:

1.   Defendant Insurance Depot Marketing Corporation and its representatives, agents, employees, and all persons acting in concert (hereinafter, Defendant) are

permanently enjoined and prohibited from manufacturing, importing, promoting, marketing, distributing, selling, offering for sale, advertising, or providing any products in connection with the Plaintiff's Mark, or any other trademark or trade dress that is confusingly similar to Plaintiff's Mark;

    2. Defendant is enjoined from representing that any products promoted, marketed, distributed, sold, advertised, or provided by Defendant are sponsored or authorized by or associated with Plaintiffs;

    3. Defendant is enjoined and prohibited from any other use of the Mark, or a derivation thereof, in any manner which is likely to confuse customers and/or the public into believing that Defendant's services, products, or goods originate from, are associated with, or are sponsored by Plaintiffs;

    4. Defendant is enjoined and ordered to remove pictures of products incorporating the Mark or confusingly similar trade dress or trademarks from any and all of Defendant's advertising, websites, affiliated websites, and promotional materials or to deliver the materials to Plaintiff for destruction;

    5. Defendant is enjoined and ordered to deliver to Plaintiff all products and goods bearing the Mark or confusingly similar trade dress or trademarks, wherever found, and to provide a written accounting of where such products have been distributed, displayed, or used;

    6. Defendant is enjoined and prohibited from using the phrase "INSURANCE DEPOT" as a keyword that would cause any search engine to include, in a search for "insurance depot," "insurancedepot," or any other string of letters that include both the

words "insurance" and "depot" in any or order or position of the string, any web page or URL that is within the control of Defendant;

7. Defendant is enjoined and ordered to cancel all Defendant-owned domain names that utilize the phrase "INSURANCE DEPOT" or any other trademark or trade dress that is confusingly similar to the Mark, including www.insurancedepotamerica.com.

The Court further ORDERS that Defendant pay Plaintiffs damages authorized by 15 U.S.C. § 1117 in the amount of $1,200,000.00.

In addition, the Court orders Defendant to pay Plaintiffs attorney's fees and costs authorized by 15 U.S.C. § 1117(a) in the amount of $5,786.85.

ORDERED this 20th day of January, 2016.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE