United States District Court
Southern District of Texas
**ENTERED**
July 22, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| NEUTRON DEPOT, LLC, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:14-CV-192 |
| | § | |
| BANKRATE, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER GRANTING MOTION TO TRANSFER

Pending is a motion filed by Defendant All Web Leads, Inc. (AWL) to transfer this case to the Austin Division of the United States District Court for the Western District of Texas (the Western District Court) (D.E. 176).  For the reasons discussed below, the motion is granted.

## BACKGROUND

Plaintiffs Neutron Depot, LLC and DepoWeb, Inc. engage in the marketing, sale, and servicing of insurance related products and services.  In 1993, Plaintiffs filed a federal trademark application with the United States Patent and Trademark Office (USPTO) for "INSURANCE DEPOT" (the Mark).  The Mark is owned by CSi Agency Services, Inc. (CSi) and has been in continuous use with the public as an identifier of a source of goods or services since 1993.  CSi licensed use of the Mark to Plaintiffs together with the right of enforcement and the right to bring suit under the Mark.

On May 27, 2014, Plaintiffs filed this cause of action against multiple Defendants, including AWL.  Plaintiffs alleged that Defendants engaged in trademark infringement, unfair competition, cybersquatting, and trademark dilution under the Trademark Act of 1946 and trademark infringement, unfair competition, and conspiracy under common law.  Plaintiffs alleged that AWL infringed on Plaintiffs' trademark by diverting or circumnavigating prospective insurance customers from Plaintiffs' websites to AWL's website and made similar allegations against eleven other Defendants.

At this time, Verdant Industries, Inc. (Verdant) is the only other defendant remaining in this case.  Bankrate, another defendant in the original case, was severed and a new case was opened with Bankrate as the only defendant.  *See Neutron Depot et al. v. Bankrate*, C.A. 2:15-CV-101 (S.D. Tex. filed May 27, 2014).   A recent motion to consolidate the two cases was denied (D.E. 180 in this case).

AWL filed its motion to transfer this case on May 2, 2016, and argues that transferring this case to the Western District Court will be more convenient for the parties and witnesses and will better serve the interests of justice.  Plaintiffs counter that transfer to the Western District Court is not warranted because (1) the case could not have been brought originally in the Western District Court; (2) the motion is not timely; and (3) transfer will not serve public or private interests in this case.

Verdant joined AWL in this motion to transfer (D.E. 177).  Verdant is a foreign limited company and has its principal place of business in the United Kingdom. Plaintiffs originally identified Verdant as "Defendant Doe dba InsuranceDepotTexas.com, an unknown individual or entity who transacts business

within the State of Texas, with its principal place of business in Texas which, among other things, markets and sells insurance and insurance related products and services, and does business throughout this District and in interstate commerce." (Third Amd. Compl., D.E. 123). Plaintiffs attempted to serve the Doe defendant by serving its domain registrar (*Id.* at para. 16).

Verdant filed an answer in this matter on September 15, 2015, and identified itself as the Doe defendant (D.E. 148). Verdant admitted that this Court had personal jurisdiction over it and admitted that venue was proper in this district, but denied that the venue was convenient to the parties or witnesses (*Id.*). Plaintiffs filed a fourth amended complaint (D.E. 169) on March 1, 2016, asserting that this Court had personal jurisdiction over AWL and Verdant because Defendants reside and/or have their principal place of business in this district and also because Defendants sell and offer for sale goods and/or services and otherwise conduct business in Texas and this judicial district (*Id.*).

## <u>APPLICABLE LAW</u>

Pursuant to 28 U.S.C. § 1404, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." District courts have broad discretion in deciding whether to order a transfer of venue within the limitations set out by the text of § 1404(a) and by the precedents set by the Supreme Court and the Fifth Circuit. *In re Volkswagen of America, Inc.*, 545 F.3d 304 (5th Cir. 2008) (citations omitted) (hereinafter *In re Volkswagen II*). When reviewing a motion for change of venue, the district court looks at (1) whether the

transferee court has jurisdiction of the matter; (2) the plaintiffs' choice of venue weighed against the convenience of the parties and witnesses; and (3) the interest of justice. *Id.* at 315.

### A.  In Personam Jurisdiction

When reviewing a motion to transfer venue, the first question is whether the action originally might have been brought in the transferee court.  Plaintiffs must have a right, independent of the consent or wishes of the defendant, to sue in that district.  *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960).  The transferee court must have personal jurisdiction over the defendant independent of any waiver by the defendant.  This requirement prohibits a defendant from forum shopping by consenting to transfer to a particular court based on tactical self-interest and withholding consent to transfer anywhere else.  15 Charles Alan Wright, et al., *Federal Practice and Procedure*, § 3845 (4th ed.).

Plaintiffs assert that this case could not have been brought in the Western District Court because that court would not have had in rem or in personam jurisdiction over Verdant, whose headquarters are in the United Kingdom.  The basis of this claim is unclear.  Plaintiffs asserted in their third and fourth amended complaints that this Court has jurisdiction over Verdant because, among other reasons, it does business in Texas and in this district.  Given the nature of the complaint--cybersquatting and trademark infringement based on Internet advertising--the same allegations of personal jurisdiction could be made in any district court.  In addition, Verdant has agreed that this Court has jurisdiction and also has joined in this motion to transfer.  The issues addressed by the Supreme Court in *Hoffman* are not present here because Verdant does not appear to be

shopping for a particular venue.  Accordingly, this action could have been brought in the Western District Court.

### B.  Plaintiffs' Choice of Venue

The general venue statute, 28 U.S.C. § 1391, controls a plaintiff's choice of venue unless a special, restrictive venue statute is applicable.  *In re Volkswagon II*, 545 F.3d at 312.   Under the statute, when a suit is filed in a multi-district state like Texas, a corporation is deemed to reside in any district within which its contacts are sufficient to subject it to personal jurisdiction, if that district were a state.  *Id.* at 312-313.  A plaintiff has broad discretion to bring an action in any district where venue lies.  *Id.* at 313.

A plaintiff's broad discretion is tempered by the venue transfer statute, 28 U.S.C. § 1404, the underlying premise of which is that courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a).   *Id.*   While some deference is given to a plaintiff's choice of forum, a motion to transfer venue should be granted when the transferee venue is clearly more convenient than the venue chosen by the plaintiff.  *Id.* at 315; *see also In re Horseshoe Entertainment*, 337 F.3d 429, 434 (5th Cir. 2003) ("[I]t is clear under Fifth Circuit precedent that the plaintiff's choice of forum is clearly a fact to be considered but in and of itself it is neither conclusive nor determinative.")

### C.  Convenience

When determining whether a proposed transferee venue is clearly more convenient than the plaintiff's chosen venue, a court looks at private interest factors and public interest factors.  *In re Volkswagen II* at 315.  Private interest factors include (1) the

relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make the trial of a case easy, expeditious, and inexpensive. *Id.* at 315. Public interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) avoidance of unnecessary problems of conflict of laws or in the application of foreign laws. *Id.*

### (1) Private Interest Factors

AWL's headquarters are in Austin and the majority of the people responsible for its intellectual property and marketing decisions are in Austin. Neither Plaintiffs nor Defendants have offices in Corpus Christi.[1] In addition, AWL asserts that key documents are located in Austin. Plaintiffs counter that advances in technology have significantly diminished the importance of the location of physical documents in the transfer analysis. It is unclear at this point whether production of documents will be made more or less convenient depending on where the litigation is conducted, because neither party has described the documentation it expects to seek or produce or whether documentation is stored electronically or in paper format. Thus, the first private factor (relative ease of access to proof) does not weigh in favor of either party.

Neither party addressed the availability of compulsory process to secure the attendance of witnesses. Because non-party witnesses were not identified and their

---

[1] Plaintiffs' principal place of business is in Dallas, Texas.

locations are unknown, this second factor also does not weigh in favor of either party. However, it is noted that any non-party witnesses living more than 100 miles from the Corpus Christi Division would be able to file a motion to quash any subpoena issued by this Court.  Fed. R. Civ. P. 45(c)(1)(A)(ii).

The convenience and cost of attendance for willing witnesses is a very important factor in a transfer analysis.  *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009).

> When the distance between an existing venue for trial of a matter and a proposed venue under § 1401(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to additional distance to be traveled.  Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment. Furthermore, the task of scheduling fact witnesses so as to minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour.

*In re Volkswagen AG*, 371 F.3d 201, 204-205 (5th Cir. 2004) (hereinafter *In re Volkswagen I*).  The only witnesses identified so far are two party witnesses for AWL and one for Verdant.   None of the witnesses is located in Corpus Christi, which is approximately 215 miles from Austin.  The AWL witnesses live in Austin and the Verdant witness lives in Surrey, England, but submitted a declaration stating that it would be significantly more convenient to travel to Austin than to Corpus Christi because there is a direct flight from London to Austin (Decl. of Jonathan Rusca, D.E. 177-1).

Plaintiffs note that courts have found that the convenience of non-party witnesses outweighs that of party witnesses, citing *Welding Technologies v. James Mach. Works,*

*LLC*, 2013 1123852 at *6 (S.D. Tex. 2013) and *J&J Sports Productions, Inc. v. Riviera*, 2010 WL 3447719 at *3 (S.D. Tex. 2010).  However, Plaintiffs have not identified any non-party witnesses residing in the Southern District so this factor does not weigh in favor of keeping the case in Corpus Christi.  Accordingly, the Court concludes that it would be more convenient for the identified party witnesses if this case were transferred to the Western District Court and this factor weighs in favor of transfer.

Plaintiffs also contend that AWL waited too long to bring its motion to transfer and that a motion to transfer may be denied on that basis alone.  The Fifth Circuit has recognized that, in rare and special circumstances, a factor of delay or prejudice might be relevant in deciding a motion to transfer, but only if such circumstance is established by clear and convincing evidence.  *Horseshoe Entertainment*, 337 F.3d at 434.  "Garden variety delay" associated with transfers is not to be taken into consideration when deciding a § 1404(a) motion to transfer.  *In re Radmax, Ltd.*, 720 F.3d 285, 289 (5th Cir. 2013).

Plaintiffs cite *Ralph v. Exxon Mobil Corp.*, No. G-05-655, 2006 WL 2266258 (S.D. Tex. 2006) and *Moto Photo, Inc. v. K.J. Broadhurst Enterprises, Inc.*, No. 301CV2282-L, 2003 WL 298799 (N.D. Tex. 2003) for their holdings that a court can deny a motion to transfer venue on grounds of undue delay alone.  In *Ralph*, the court denied a motion to transfer venue because the defendant waited six months after the case was filed to seek a transfer and the trial was scheduled for three months in the future. The court found that a transfer at the late stage of the proceedings would work a hardship on the plaintiff who would be forced to move to the end of the line of the transferee court.

Id. at *4.  Similarly, in *Moto Photo*, although the plaintiff sought a change of venue three weeks after filing for bankruptcy in another district, the case had progressed and dispositive motions were due within a month.  The court found that the timing of the plaintiff's motion created a substantial possibility of undue delay if the case was transferred and the motion could be denied on that basis alone.  *Id.* at *5.

This case was filed in May 2014, and AWL did not bring its motion to transfer until two years later, in May 2016.  However, multiple parties have caused this case to proceed slowly.  Several Defendants sought extensions of time to file answers and other responses and in July 2015, Plaintiffs' counsel withdrew and Plaintiffs were given ninety days to hire new counsel (D.E. 138, 146, 147).  No substantive motions were filed in the case from July 2015 through December 2015.

This case is set for trial in April 2017 (D.E. 160).  Discovery is scheduled to end on September 30, 2016 (*Id.*).  Plaintiffs have not described any harm or prejudice they will suffer from the delayed filing of the motion to transfer.  Because Plaintiffs have not shown by clear and convincing evidence that they will be prejudiced by any delay which may result from the transfer of this case, the fact that the motion was delayed does not weigh against the transfer.

### (2) Public Interest Factors

The first public interest factor--court congestion--slightly favors the Western District Court.  AWL submitted statistics comparing judicial caseload filings for the Western District and the Southern District (D.E. 176-2 at pp. 34-35).  Although the districts are not broken down into divisions, overall in 2015, the Southern District judges

handled a higher average number of civil cases per judgeship (318) than the Western District (250).  The time from filing to disposition of civil matters is approximately the same for the two districts, 7.2 months and 7.1 months, respectively, while the average time from filing to trial is 21.3 months in the Southern District and 17.9 months in the Western District.  It appears that the civil docket for the Western District Court is somewhat less crowded than the docket for the Southern District Court and that factor weighs in favor of transfer.[2]

The "local interest" factor does not weigh in favor of either court because the allegations are that Defendants diverted customers from Plaintiffs via the internet.  Any harm that Plaintiffs suffered occurred wherever the potential customer clicked on the link that diverted them from Plaintiffs' website.  It cannot be said that the residents of Austin have a greater interest in the outcome of this case than residents of Corpus Christi.

The familiarity of the courts with the law is a neutral factor, and the transfer of venue does not raise any concerns regarding conflict of laws or application of foreign laws.

The only other factor raised by Plaintiffs in opposition to the motion to transfer is that Bankrate was severed from this case and presumably that case will continue in Corpus Christi because this Court recently denied Plaintiffs' motion to consolidate the Bankrate case with this case.  Plaintiffs complain that if this case is transferred, they will be forced to litigate two substantially similar cases in two different venues.

---

[2] In addition, although the statistical data is not broken down into divisions, the Court notes that the Corpus Christi division has had a judicial vacancy for more than five years.  At this time, the undersigned is the only full time district court judge in Corpus Christi.

While Plaintiffs present this as a convenience factor, it is unclear how they would be more inconvenienced by having to travel to Corpus Christi for one trial and to Austin for another trial than they would if both trials were in Corpus Christi. However, transfer of one case and not the other raises the possibility of inconsistent results. This possibility is lessened by the fact that the cases involve different defendants and distinct allegations of misuse of Plaintiffs' Mark. Nevertheless, this factor weighs in favor of keeping this case in the Southern District.

## CONCLUSION

When the relevant factors are considered together, the balance of factors supports transferring this case to the Austin Division of the Western District of Texas, and Plaintiffs have not shown that they will be prejudiced by the transfer. Accordingly, Plaintiffs' motion to transfer (D.E. 176) is GRANTED. The Clerk is ORDERED to transfer this case to the Austin Division of the Western District of Texas.

ORDERED this 22nd day of July, 2016.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE